**SIGNED THIS: September 28, 2007**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

```
In Re                         )
                              )   In Bankruptcy
DONALD G. MOORMAN and         )
BOBBIE J. MOORMAN,            )   Case No. 07-70254
                              )
       Debtors.               )
```

# O P I N I O N

This case comes before the Court for a determination of whether Chapter 13 debtors, calculating their disposable income pursuant to §1325(b)(2) and (b)(3) and §707(b)(2), may claim an ownership deduction for a vehicle they own free and clear of liens and for which they make no secured debt payment. This issue, which arises under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), has divided courts. At least 41 courts have issued written opinions on this issue or on the related

issue involving the availability of the deduction under similar facts for the Chapter 7 means test calculation. Twenty-four courts have allowed the deduction while 17 courts, including two district courts, have denied the deduction. After considering many thoughtful, well-reasoned, and well-written opinions on both sides of the issue, this Court finds that the deduction should be allowed.

Donald Moorman and Bobbie Moorman ("Debtors") filed their voluntary petition under Chapter 13 of the Bankruptcy Code on February 19, 2007. With their petition, Debtors filed the required Form B22C - Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C"). Because the Debtors' current monthly income, as calculated according to the B22C, exceeded the median income for a family of two in Illinois, the Debtors acknowledged on the B22C that they are required to calculate disposable income pursuant to §1325(b)(3) and, accordingly, must use the deductions set forth in §707(b)(2) rather than their actual expenses set forth on Schedule J to calculate disposable income.  11 U.S.C. §1325(b)(3); 11 U.S.C. §707(b)(2).

The Debtors have two vehicles - a 1999 Chrysler that they value at $1,500, and a 1998 Mazda valued at $1,200. The Chrysler is described as having over 160,000 miles on it and is subject to a $4,000 lien of the Sangamo Credit Union. The Mazda has been

driven over 149,000 miles and is owned free and clear of any liens.

Expense deductions for the calculation of disposable income are determined pursuant to §707(b)(2)(A)(ii), (iii), and (iv). Relevant to the precise issue at hand is §707(b)(2)(A)(ii)(I), which provides in part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . .

11 U.S.C. §707(b)(2)(A)(ii)(I).

Also relevant is Section 707(b)(2)(A)(iii), which provides for the deduction of secured indebtedness as follows:

> (iii)  The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
>
>> (I)  the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
>> (II)  any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

11 U.S.C. §707(b)(2)(A)(iii).

Thus, a debtor's deductible expenses include both fixed amounts from National and Local Standards and certain actual expenditures, including amounts due on secured debts. With respect to vehicles, two types of Standard deductions are available. An operating deduction is available based on whether a debtor has either one or two or more vehicles. Ownership deductions are available for up to a maximum of two vehicles. Because the Standard ownership deductions include allowances for secured debt payment, the amount of any such secured debt owed by debtors as calculated at line 47 of the B22C is subtracted from the Standard ownership deduction, and only the net amount of the Standard is then available as an expense deduction. The secured debt payment is then deducted separately at line 47 of the B22C.

On their B22C, the Debtors took a deduction at line 27 for vehicle operation expenses for two vehicles in the full available amount of $358. On line 28, the Debtors took an ownership deduction for their Chrysler in the amount of $404.33. That deduction was calculated by taking the Standard ownership deduction of $471 for a first car and subtracting from that $66.67, which represents the average monthly secured payment for the Chrysler over a 60-month period, as determined at line 47. The Trustee did not object to either of these deductions.

On their B22C, the Debtors also took the Standard ownership deduction for a second car - the Mazda - in the amount of $332.

The Trustee objected to that deduction, asserting that no ownership deduction is available with respect to a vehicle for which no debt or lease payment is being made.  The Debtors claim that, notwithstanding the lack of a secured debt payment, they still have ownership expenses related to the Mazda and are entitled to the deduction.  Because there are no relevant facts in dispute, the parties have briefed the issues relating to the availability of the ownership deduction under the circumstances presented here.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and §157(b)(2)(A).

As set forth above, this question of the availability of the ownership deduction for vehicles owned free and clear of liens has divided courts.  Generally, in discussing the availability of the deduction, courts have concentrated their analysis on whether the Financial Analysis Handbook located at Part 5, Chapter 5.15, Section 1 of the Internal Revenue Manual ("IRM") should be consulted in determining the availability of the deduction and on the meaning of the term "applicable" as it is used in §707(b)(2)(A)(ii)(I).

Some courts that have disallowed the deduction have relied on the IRM, which provides:  "If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense."  IRM 5.15.1.7(4)(b).  *See also* Fokkena v. Hartwick, ___ B.R. ___, 2007

WL 2350560 *5 (D. Minn.); In re Slusher, 359 B.R. 290, 309 (Bankr. D. Nev. 2007); In re McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006).  Other courts that have allowed the deduction have found, however, that the IRM is not relevant to the analysis of what deductions are allowable for the Bankruptcy Code's disposable income or means test calculations.  *See* In re Fowler, 349 B.R. 414, 418-19 (Bankr. D. Del. 2006); In re Chamberlain, 369 B.R. 519, 525 (Bankr. D. Ariz. 2007); In re Swan, 368 B.R. 12, 18 (Bankr. N.D. Cal. 2007); In re Barrett, 371 B.R. 855, 858-59 (Bankr. S.D. Ill. 2007).

The IRM and, in particular, the Financial Analysis Handbook portion of the IRM, provide guidance to IRS field agents working with taxpayers to resolve tax collection issues.  *See* IRM 5.15.1.2.  Presumably, the goal of the IRS employees using the IRM is to maximize revenue to the IRS without specific regard to taxpayers' other obligations to secured or unsecured creditors.  Thus, the IRM and related Standards provide "caps" on the amount of secured debt payments which may be deducted when figuring what payments should be made to the IRS to pay delinquent taxes.  IRM 5.15.1.7.  These caps are set without regard to the actual amounts a taxpayer may be obligated to pay secured creditors.  The IRM directs IRS field agents to allow the lesser of the capped amount - the Standard - or the actual amount of the secured debt payment in calculating a tax payment arrangement.  IRM 5.15.1.7(4).

Chapter 13 of the Bankruptcy Code, on the other hand, attempts to provide a structure for the repayment of all debts based on established priorities. Although certain tax debts receive priority, other tax debts may be paid as secured or unsecured claims and may also be discharged. 11 U.S.C. §507(a)(8); 11 U.S.C. §523(a)(1). For purposes of the Chapter 13 disposable income test and the Chapter 7 means test, all secured debt which is contractually due within the five-year period after filing may be deducted by debtors. 11 U.S.C. §707(b)(2)(A)(iii); In re Carlton, 370 B.R. 188, 192 (Bankr. C.D. Ill. 2007). There are no caps on such expenditures included in the statutory formulae for calculating either Chapter 13 disposable income or the Chapter 7 presumption of abuse. Id.

Thus, this Court finds that, although Congress borrowed the National and Local Standards from the IRS for incorporation into BAPCPA, there is no reasonable basis to also borrow the IRS collection guidelines and methods found in the IRM for interpretation of BAPCPA. It is clear that the IRM cannot be incorporated in its entirety into the analysis because some of its provision simply could not apply. For example, the "cap" provisions discussed above used by the IRS to consider secured debt payments conflict with express provisions of BAPCPA and, therefore, the language in the IRM about the Standards being "caps" cannot be applied. Thus, if this Court were to find that the IRM must be

considered for disposable income and means test calculations, this Court would also have to make the contrary finding that certain provisions of the IRM must be totally ignored for those same calculations. This Court will not make such findings and agrees with the Chamberlain court, which stated:

> Nothing in the statute, Bankruptcy Rules or official forms refers a debtor to any IRS publications for additional rules or interpretation. The IRS is not an administrative agency that administers the Bankruptcy Code, so there is no basis for a Court to defer to its administrative expertise.

In re Chamberlain, 369 B.R. *at* 525 (citations omitted).

Further, there is ample evidence that Congress considered, but subsequently rejected, the incorporation of the IRM and its Financial Analysis Handbook into BAPCPA. As the Fowler court points out:

> The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards.

In re Fowler, 349 B.R. *at* 419 (citations omitted).

This Court agrees, and will not consider the IRM to determine the availability of the Standard ownership deduction for debtors who own vehicles free and clear of liens.

As set forth above, the statute provides that, for disposable income or means test calculation purposes, a:

> debtor's monthly expenses shall be the debtor's **applicable** monthly expense amounts specified under the National Standards and Local Standards, and the debtor's

-8-

>  actual monthly expenses for the categories specified as Other Necessary Expenses. . . ."

11 U.S.C. §707(b)(2)(A)(ii)(I) (emphasis added).

Debtors attempting to comply with the statute go to the website of the United States Trustee ("UST") to find links to tables which provide the National and Local Standards for housing, transportation, and other expenses. Debtors select the Standards for use in their individual cases from the tables based on their date of filing, family size, geographic location, and number of vehicles owned.

In completing their B22C, Debtors went to the UST's website and first selected the data for cases filed after February 1, 2007. They then selected their operating deduction based on operating two vehicles in the Midwest Census Region. Finally, they selected the ownership deduction for each of the two vehicles. Thus, Debtors assert that they followed the statutory instructions and properly selected the deductions applicable to their circumstances. The Chapter 13 Trustee does not challenge that the Debtors used the correct tables. Rather, the Trustee asserts that the Standard deduction labeled as Ownership Cost - Second Car is really not available to pay ownership costs associated with a second vehicle unless some part of that ownership cost is a secured debt payment. Neither the Trustee nor any of the cases cited by the Trustee identify any specific statutory provision that compels such a result.

In considering arguments similar to those made by the Chapter 13 Trustee in this case, courts have discussed the distinction between the use of the word "applicable" as it relates to the Standard deductions, and the word "actual" which is used to describe other - non-Standard - deductions which may be taken. In <u>In re Farrar-Johnson</u>, 353 B.R. 224, 230-31 (Bankr. N.D. Ill 2006), the court considered the availability of a housing Standard deduction for debtors who did not have a housing expense and found that the Standard deduction was available, and that the "applicable" deduction was to be determined by debtors' geographic location and family size rather than the amount of any actual expenditure. <u>Id.</u> *at* 231. Other courts have held that, in passing BAPCPA, Congress intended to limit judicial discretion and to create objective - perhaps, even rigid and inflexible - standards for expense deductions. <u>In re Gress</u>, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006); <u>In re Barr</u>, 341 B.R. 181, 185 (Bankr. M.D. N.C. 2006).

In view of these cases, this Court finds that a debtor's "applicable" deductions are those that correspond to the debtor's date of filing, family size, geographic location, number of vehicles, or other factors set forth in the Standard tables. In determining whether a debtor has properly claimed his "applicable" deductions, a Court must determine whether the debtor has correctly navigated through the tables. How a debtor's actual expenditures correspond to the amount of a Standard deduction is not relevant in

-10-

determining whether such Standard deduction is "applicable."

If Congress had wanted to limit vehicle ownership deductions to the amount actually expended for secured debt payment as the IRS does, albeit with a cap, it could have done so by allowing the secured debt payment in full and eliminating the ownership deduction altogether. But, Congress did not do that. Instead, the statute specifically provides for the deduction of both a secured debt payment and the balance of the related Standard to the extent that the secured debt payment does not exceed the Standard. A debtor can deduct a minimal secured debt payment - presumably as little as $1.00 - from the Standard vehicle ownership deduction, and then still receive the balance of the Standard as a deduction. Thus, with even the smallest of secured debt payments, the Standard deduction is still "applicable" regardless of a debtor's actual ownership expenses. It does not logically follow that, if a debtor has no secured debt payment to deduct from the Standard, the Standard, for some reason, becomes no longer "applicable." In re Wilson, ___ B.R. ___, 2007 WL 2199021 *5 (Bankr. W.D. Ark.). To the contrary, following the statutory formula, a debtor with no secured debt payment should receive the entire Standard deduction.

This Court is cognizant of the concerns expressed in In re Ross-Tousey, 368 B.R. 762 (E.D. Wis. 2007). There, the district court opined that, if a full ownership deduction is available to a debtor who has no secured debt payment on a vehicle, a debtor could

claim the deduction even for an old, inoperable vehicle rusting away in the backyard.  Id. *at* 768.  This leads to the concern that a debtor might purchase such a vehicle for a few dollars for the purpose of qualifying for the deduction.  Although that is certainly possible, it may be just as likely that a debtor faced with receiving no ownership deduction for a vehicle owned free and clear of liens would obtain a modest loan against the vehicle solely for the purpose of qualifying for the Standard deduction.  Both scenarios are problematic, but that is the challenge of the required use of a Standard expense deduction rather than the actual, provable vehicle ownership expenses of a debtor.  The remedy, if any is needed for this perceived problem, is legislative, not judicial.

For the reasons set forth above, the Trustee's objections to the Debtors' B22C and to confirmation of the Debtors' Amended Chapter 13 Plan based on the Debtors' deduction of the Standard ownership deduction for their second vehicle are overruled.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###